**NEW PRAIRIE CLASSROOM TEACH-
ERS ASSOCIATION, Appellant
(Plaintiff Below),**

v.

**Susan STEWART, et al., Appellees
(Defendants Below).**

**No. 4–982 A 270.**

Court of Appeals of Indiana,
Fourth District.

June 21, 1983.

Richard J. Darko, Bernard L. Pylitt,
Bayh, Tabbert & Capehart, Indianapolis,
Patrick E. Donoghue, Sweeney, Winski,
Dabagia & Donoghue, Michigan City, for
appellant.

David T. Bryant, National Right to Work
Legal Defense Foundation, Inc., Spring-
field, Va., Arthur L. Roule, Jr., Roule &
Raelson, LaPorte, for appellees.

CONOVER, Judge.

Plaintiff-appellant New Prairie Class-
room Teachers Association (NPCTA) ap-
peals the LaPorte County Court's judgment
for defendants-appellees Susan Stewart, et
al., (teachers) in 37 small claims actions
consolidated for trial wherein the NPCTA
sought to collect a "fair share fee" from
the teachers who were not dues-paying
members of NPCTA.

We reverse.

ISSUE

1. Whether the trial court erred in de-
termining the fair share representation fee
clause at issue was not enforceable against
the non-member teachers under the Certifi-
cated Educational Employees Bargaining
Act.

FACTS

NPCTA is the recognized exclusive rep-
resentative of teachers employed by the
New Prairie United School Corporation
(school board) under the Certificated Edu-
cational Employee Bargaining Act (CEE-
BA). NPCTA and the school board exe-
cuted a collective bargaining agreement for
the period July 1, 1980, through June 30,
1983, which provides in part:

*Paragraph 1.*

The Board and Association agree that all
members of the bargaining unit who are
not also members of the Association
have an obligation to pay a representa-
tion fee to the Association, including the
Indiana State Teachers Association and
the National Education Association.

*Paragraph 2.*

By October 1 of each year, the Associa-
tion shall provide the Board with a list of
bargaining unit members who are not
also Association members, and the Board
shall request each person to submit an
original individual enrollment form, with-
in a reasonable time. Upon return of
such signed form to the Board, the Board
will deduct the representation fee in 22
equal installments from the payroll of
each person who submits an authoriza-
tion. Persons who refuse to sign an
authorization form or who revoke an exe-

cuted form have a continuing enforceable obligation to pay the representation fee directly to the Association; however, the employer shall be under no obligation whatsoever to enforce the terms of this Section. (4.6).

*Paragraph 3.*

The Association recognizes that no member of the bargaining unit should be forced to contribute financial support to political or ideological activities of the Association unrelated to collective bargaining, contract administration, and grievance adjustment or unrelated to its duties as exclusive bargaining representative.

*Paragraph 4.*

The parties agree that the provisions of this Article (IV) will not be enforced against any person who initiates proceedings challenging the legality of this Article, or who is a party thereto, pending final disposition of such proceedings, except that the representation fee may be collected by the Board, and held in escrow, provided such employee so consents.

*Paragraph 5.*

The Association, including the local, the Indiana State Teachers Association and the National Education Association agree to "hold harmless" the New Prairie United School Corporation, its School Board, employees, agents and assigns, as to all claims that may arise in litigation resulting from the implementation of this provision or attempted implementation. Said Associations agree to pay all costs of such litigation, including court costs, attorney fees, judgments, penalties and interest. Prior to performance by the employer of any obligation it may have under this Article, the Employer may demand such written security, bonds, or assurances, it deems reasonable, that said Associations will comply with this section, and said Associations shall agree to execute same.

These 37 teachers refused to sign payroll deduction authorization forms or otherwise pay representation fees to NPCTA.

NPCTA is affiliated with the Indiana State Teachers Association (ISTA) and the National Educational Association (NEA). For the 1980–81 school year, a member of NPCTA paid $198 dues which were distributed to these organizations as follows:

| | |
|---|---|
| NPCTA | $ 20 |
| ISTA | $133 |
| NEA | $ 45. |

NPCTA instituted these 37 small claims actions to recover a representation fee of $198, subject to a later rebate by ISTA and NEA in the amounts of $1.40 and $4.63 respectively for political activities. The trial court entered judgment for the 37 nonmember teachers and NPCTA appeals.

## DISCUSSION AND DECISION

This case is controlled by *Fort Wayne Education Association, Inc. v. Goetz,* (1982) Ind.App., 443 N.E.2d 364 (trans. dism'd.). On substantially similar facts Miller, J., writing for the court, said

Here, the Association negotiated ... an "agency shop" provision. An agency shop is defined as requiring, as a *condition of employment,* nonunion member employees to pay fees to a union for services rendered as their bargaining representative but not otherwise requiring membership. *See Cooper v. General Dynamics, Convair Aerospace Division,* (5th Cir.1976) 533 F.2d 163, *cert. denied* (1977) 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091; *Gorman, supra,* at 641–42; G. Rose, Understanding Labor Relations 197 (1962).... It can no longer be gainsaid that public school teachers possess the constitutional right to associate in labor organizations, as provided by the First Amendment. (citations omitted) Equally clear is an individual's right of choice not to associate himself with a particular organization or ideology. (citations omitted) However, in the action herein, the Master Contract provision does not require membership in the Association. It merely requires that nonmember teachers carry their financial burden in return for the benefits they receive from the Association's activities

as their exclusive representative. This monetary assessment is not, of itself, unconstitutional. As the United States Supreme Court has stated, and recently reaffirmed, "We hold that the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work ... does not violate ... the First ... Amendmen[t]." *Railway Employees' Department v. Hanson,* (1956) 351 U.S. 225, 238, 76 S.Ct. 714, 721, 100 L.Ed. 1112; *Abood v. Detroit Board of Education, supra,* [1977] 431 U.S. [209] at 219, 97 S.Ct. [1782] at 1791 [52 L.Ed.2d 261].

The rationale in support of agency shop agreements is the elimination of "free riders," those nonmembers who partake of the benefits engendered by their labor representative without paying their share of the costs. *NLRB v. General Motors Corp., supra* [ (1963) 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670]; *International Association of Machinists v. Street,* (1961) 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141.

*Ibid.,* at 368–369.

The agency shop agreement between NPCTA and the school board as to payment of representation fees to NPCTA was authorized by law, constitutional, and binding upon non-member teachers. Thus, the trial court erred in holding otherwise.

Reversed and remanded for further proceedings consistent with this opinion.

YOUNG, P.J., and MILLER, J., concur.